UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EARL T. LINDSAY, JR. AND
JOCELYN BUTLER,
INDIVIDUALLY AND ON BEHALF                    CIVIL ACTION
OF THE DECEDENT, EARL T.
LINDSAY

VERSUS                                        NO: 16-3054

PORTS AMERICA GULFPORT,                       SECTION: R
INC., *ET AL.*

## ORDER AND REASONS

Third-party defendant Industrial Developmental Corporation of South
Africa, Ltd. ("IDC") removed plaintiffs' state-court action on April 13, 2016.
Plaintiffs Earl T. Lindsay, Jr. and Jocelyn Butler now move the Court to
remand the action or, alternatively, to sever defendant Cooper/T. Smith
Stevedoring Company, Inc.'s third-party claims against IDC and remand the
main action.[1]  For the following reasons, the Court denies the motion.  The
Court orders IDC to file its motion to dismiss Cooper/T. Smith's third-party
claims against it within twenty-one (21) days of entry of this order.

---

[1] R. Doc. 13.

## I.    BACKGROUND

This case arises out of decedent Earl T. Lindsay's occupational exposure to asbestos and contraction of lung cancer.   Plaintiffs, two of Lindsay's surviving children, allege that Lindsay worked as a longshoreman for several stevedoring companies in the Port of New Orleans from 1954 to 1979.[2]  During this period, Lindsay was allegedly exposed to airborne asbestos fibers during the loading and off-loading of cargo that included raw asbestos and asbestos-containing products and materials.[3]   Plaintiffs allege that Lindsay developed lung cancer as a result of this exposure and died from the disease on February 18, 2015.[4]

On February 17, 2016, plaintiffs filed this lawsuit in the Civil District Court for the Parish of Orleans against Lindsay's employers, various vessel owners and vessel repair contractors associated with his employment, two insurance companies, and other firms.  Importantly, for purposes of plaintiffs' remand motion, two of the entities named as defendants in plaintiffs' state-court petition were Industrial Development Corporation of South Africa, Ltd.

---

[2] R. Doc. 1-2 at 38 (List of Lindsay's employers, attached as Exhibit A to plaintiffs' state-court petition).

[3] R. Doc. 1-2 at 20 ¶ 13 (Plaintiffs' state-court petition).

[4] *Id.* at 21 ¶ 19.

("IDC") and South African Marine Corporation ("South African Marine").  As to most of the named defendants, plaintiffs asserted claims for, among other things, negligence, strict liability, intentional tort, and premises liability.  As to IDC and South African Marine, plaintiffs also asserted claims under the Jones Act, 46 U.S.C. § 30104, *et seq.*

One day after filing suit, on February 18, plaintiffs filed a motion to dismiss all claims asserted against IDC and South African Marine with prejudice.[5]  The Civil District Court took no action on the motion for nearly three weeks.[6]  In the interim, on February 23, defendant Cooper/T. Smith Stevedoring Company, Inc. filed a third-party demand seeking contribution and/or indemnification from IDC and South African Marine for any damages Cooper/T. Smith owed to plaintiffs in the suit.[7]  On March 9, the Civil District Court judge signed an order granting plaintiffs' motion to dismiss its claims against IDC and South African Marine with prejudice.[8]

---

[5] R. Doc. 9-3 at 2 (Plaintiffs' "Motion and Order for Dismissal with Prejudice").

[6] *Id.*

[7] R. Doc. 1-2 (Cooper/T. Smith"s "Exception and Answer . . . to Plaintiff's Original Petition for Damages and Third-Party Demand").

[8] R. Doc. 9-3 at 2.

3

According to Cooper/T. Smith, it served the third-party demand on IDC by commercial courier.[9] Cooper/T. Smith and IDC assert, and plaintiffs do not dispute, that a representative for IDC received the third-party demand on March 11.[10]   On April 13, IDC removed the entire case to this Court.   In so doing, IDC invoked 28 U.S.C. § 1441(d) and the Foreign Sovereign Immunities Act ("FSIA"), and alleged that it is an agency or instrumentality of South Africa.

Plaintiffs now move to remand the case to state court or, in the alternative, to sever Cooper/T. Smith's third-party claims and remand the main action.[11]   Plaintiffs argue that remand is warranted for each of the following reasons: (1) IDC's notice of removal fails to demonstrate its status as an agency or instrumentality of a foreign state; (2) IDC's notice of removal was untimely; (3) IDC is not a proper party to this lawsuit because Cooper/T. Smith was incapable of asserting third-party claims against IDC after plaintiffs moved to dismiss their own claims against IDC with prejudice; (4) plaintiffs' Jones Act claims against IDC prevent IDC from removing to federal court; and

---

[9] R. Doc. 12 at 2.

[10] *Id.*; R. Doc. 13 at 4; *see also* R. Doc. 12-1 at 1 (FedEx Express shipment and delivery information, attached as Exhibit 1 to Cooper/ T. Smith's opposition to plaintiffs' motion to remand).

[11] R. Doc. 9.

(5) Cooper/T. Smith's claims against IDC are "illusory" and are being used as a "procedural loophole" to create federal jurisdiction.

Plaintiffs also argue that even if IDC's removal was proper, 28 U.S.C. § 1441(c) requires the Court to sever Cooper/T. Smith's third-party claims against IDC and remand the main action to state court. Defendant Cooper/T. Smith opposes plaintiffs' motion.[12]  Third-party defendant IDC adopts plaintiffs' argument that IDC is not a proper party to this lawsuit but opposes all other asserted grounds for remand.[13]

## II.  LEGAL STANDARD

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal is appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.  *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276

---

[12] R. Doc. 12.

[13] R. Doc. 13.

F.3d 720, 723 (5th Cir. 2002).  Though the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal. *See* 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

## III.   DISCUSSION

### A.   Foreign State Removal

Under 28 U.S.C. § 1330(a), federal district courts are vested with original jurisdiction over any civil action against a "foreign state," as defined in 28 U.S.C. § 1603(a), a provision of the Foreign Sovereign Immunities Act ("FSIA").  Section 1603 defines "foreign state" as follows:

> (a) A "foreign state" . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

> (b) An "agency or instrumentality of a foreign state" means any entity--

>> (1) which is a separate legal person, corporate or otherwise, and

>> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

>    (3) which is neither a citizen of a State of the United States
>    as defined in section 1332(c) and (e) of this title, nor created
>    under the laws of any third country.

28 U.S.C. § 1603(a)-(b).

Another FSIA provision, 28 U.S.C. § 1441(d), "governs removal of actions against foreign states." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 473 (2003). Section 1441(d) provides that "[a]ny civil action brought in a State court against a foreign state as defined in [28 U.S.C. § 1603(a)] may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(d). As the Fifth Circuit has explained, section 1441(d) grants a "broad right of removal" that may be invoked by any "foreign state defendant, even if it is a third-party defendant. . . ." *Nolan v. Boeing Co.*, 919 F.2d 1058, 1066 (5th Cir. 1990). When a foreign state defendant or third-party defendant initiates removal under section 1441(d), the entire action is removed, not just the claims specifically asserted against the foreign state. *Id.*; *Montegut v. Bunge N. Am., Inc.*, No. CIV.A. 08-1740, 2008 WL 2178082, at *2 (E.D. La. May 21, 2008). The FSIA's broad removal right reflects Congress's "paramount desire" that foreign states sued in state court "have access to a federal forum to ensure uniformity in procedure and substance. . . ." *Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 (5th Cir. 2000).

Here, plaintiffs argue that IDC has not met its burden of establishing that it is a foreign state capable of seeking removal under section 1441(d). Plaintiffs assert that the "conclusory" allegations in IDC's notice of removal provide no facts to support the third requirement of foreign "agency or instrumentality" status--that the removing entity is neither a citizen of the United States, nor an entity created under the laws of a third country.  It is true that the notice of removal does not expressly allege that IDC knows no home beyond South Africa's borders.  But the removal statute requires a litigant to provide only a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  IDC's notice of removal states that it is a political agency or instrumentality a foreign state under the meaning of 28 U.S.C. § 1603.  It further states that IDC is wholly-owned by the South African government.  These allegations sufficiently describe the asserted grounds for IDC's removal. *See Steward v. Garrett*, 935 F. Supp. 849, 852 (E.D. La. 1996) (finding that defendant demonstrated availability of FSIA removal even though its removal notice did not provide facts to support its allegation of foreign state status); *see also Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962) ("The absence of detailed grounds setting forth the basis for removal is not fatal to defendant's right to remove."); *Wormley v. S. Pac. Transp. Co.*, 863 F. Supp. 382, 384 (E.D. Tex. 1994) ("Section 1446(a) does not require that

the notice of removal allege, in excruciating detail, every conceivable fact which supports removal.").

Moreover, looking past the allegations in the notice of removal, IDC submits evidence that it is an agency or instrumentality of the South African government for purposes of the FSIA.  Specifically, IDC submits declarations by two South African attorneys, Graham Charnock[14] and Jeremy Prain.[15]  Both declarants state that IDC is a state-owned financial institution; that IDC has always been incorporated in South Africa with the South African government as its only shareholder; and that IDC is neither a United States citizen, nor a corporation organized under the laws of United States or any country other than South Africa.[16]  Plaintiffs submit no evidence to dispute these assertions.  Thus, consistent with other courts that have addressed the issue, the Court finds that IDC is entitled to invoke the removal provision of the FSIA.  *See Stevens v. Cooper/T. Smith Stevedoring Co.*, Inc., No. CIV.A. 10-968, at 5 (E.D. La. Aug. 24, 2010) (finding that IDC is entitled to section 1441(d) removal); *Montegut*, 2008 WL 2178082, at *2 n. 3  (same).  The Court must therefore determine whether IDC removed this case in a timely manner.

---

[14] R. Doc. 13-5.

[15] R. Doc. 13-6.

[16] R. Doc. 13-5 at 1-2; R. Doc. 13-6 at 1-2.

### B.    Timeliness of Removal

Plaintiffs argue that IDC's removal was untimely because it was not filed until thirty-two days after IDC received Cooper/T. Smith's third-party demand.  While a party generally must file its notice of removal within thirty days of receiving the initial pleading, 28 U.S.C. § 1446(b)(1), a more relaxed rule applies to foreign states.  The FSIA provides that, for a foreign state defendant seeking to remove a case from state to federal court, the thirty-day period "may be enlarged at any time for cause shown."  28 U.S.C. § 1441(d).  Notably, this language does not require "good cause," but only "cause," which reflects a Congressional preference for permitting foreign states the choice of litigating in federal court.  *See Steward*, 935 F. Supp. at 853 ("By creating this exception for foreign states, Congress has expressed a preference for allowing foreign sovereigns the choice of litigating in a federal forum where there is a greater chance of uniformity of action by the courts."); *Tennessee Gas Pipeline Co. v. Cont'l Cas. Co.*, 814 F. Supp. 1302, 1305 (M.D. La. 1993) (noting the absence of "good" from section 1441(d)'s cause requirement); *Refco, Inc. v. Galadari*, 755 F Supp 79, 83–84 (S.D.N.Y. 1991) (noting the "strong policy in favor of removal involving foreign sovereigns").

The FSIA commits the decision of whether to enlarge the deadline for removal under section 1441(d) to the discretion of the district court.  *See FSM*

*Dev. Bank v. Arthur*, No. 11-CV-05494-LHK, 2012 WL 1438834, at *5 (N.D. Cal. Apr. 25, 2012) (quoting *State Farm Mut. Auto. Ins. Co. v. Ins. Co. of British Columbia*, No. CV 09-762-ST, 2010 WL 331786, at *4 (D. Or. Jan. 25, 2010)). In the exercise of this discretion, courts consider a number of factors, including: (1) "the danger of prejudice to the nonmoving party"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay"; and (4) "whether the movant acted in good faith." *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1187 (10th Cir. 2008); *FSM Dev. Bank*, 2012 WL 1438834, at *5 (same).

Applying these factors, the Court finds that IDC has shown cause to enlarge the removal period. Beginning with the first factor, IDC filed its notice of removal thirty-two days after receiving Cooper/T. Smith's third-party demand. While IDC's filing came two days after the usual deadline, plaintiffs have identified no prejudice they have suffered as a result of this delay. *See Big Sky*, 533 F.3d at 1188 (affirming enlargement of removal period when nonmoving party was not prejudiced by a three-week delay); *see also Leith v. Lufthansa German Airlines*, 793 F. Supp. 808, 811 (N.D. Ill. 1992) (permitting FSIA removal one day after the usual deadline).[17]

---

[17] To the extent plaintiffs suggest they are prejudiced by removal because the FSIA precludes jury trials in federal-court actions against foreign state defendants, "the absence or presence of a jury a trial does not constitute prejudice." *See Refco* 755 F.

As to the second factor, only limited proceedings took place in state court before removal.  Plaintiffs filed their petition for damages against numerous defendants; one defendant filed an answer and a third-party demand against IDC; and plaintiffs dismissed their own claims against IDC and South African Marine with prejudice.  Otherwise, it appears that many of the other defendants have not yet answered or even been served with plaintiffs' petition.[18]  No discovery has been conducted.  And there has been no substantive motion practice, which eliminates any concern of wasting judicial resources.  The second factor therefore weighs heavily in favor of IDC, as courts have routinely extended foreign states' removal periods under similar circumstances.  *Compare Talbot v. Saipem A.G.*, 835 F. Supp. 352, 355 (S.D. Tex. 1993) (allowing removal after four months when there had been no depositions or motions practice, and no trial date had been set); *and Refco*, 755 F.Supp. at 83–84 (allowing removal after five year delay, when there had been little progress in state court); *with Boskoff v. Boeing Co.*, No. 83 CIV. 2756 (IBW), 1984 WL 1066, at *4 (S.D.N.Y. Oct. 19, 1984) (finding removal improper after there had been extensive litigation in state court, and the case

---

Supp. at 84.

[18] Cooper/T. Smith asserts that plaintiffs do not appear to have served any first-party defendants, R. Doc. 12 at 6, and plaintiffs give no argument or evidence to dispute this claim.

was nearly ready for trial); *see also Steward*, 935 F. Supp. at 854 ("The greatest weight, considering this Court's respect for federalism, is given to the extent the case has progressed in state court prior to removal by the foreign state.").

Turning to the third and fourth factors, IDC has adequately explained its untimely filing, and there is no evidence that IDC delayed removing this case in bad faith. According to IDC's account, which plaintiffs do not dispute, the two-day delay in filing its removal notice was due to internal mail handling practices and an intervening weekend.[19] FedEx delivered a package containing Cooper/T. Smith's third-party demand to IDC's headquarters late in the day on Friday, March 11, where it was received by a receptionist at the front desk.[20] The receptionist routed the package to IDC's legal department, where it was received and processed by a paralegal on Monday, March 14. Once Cooper/T. Smith's third-party demand made it into the right hands, IDC promptly retained outside counsel, who removed the case from state court less than one month later on April 13.

Thus, this is not a case in which a foreign state litigant intentionally delayed filing a removal notice to harass its opponent or obtain an unfair

---

[19] R. Doc. 13 at 4-5.

[20] *See* 12-1 at 1 (FedEx Express shipment and delivery information).

13

advantage.  *Cf. Boskoff*, 1984 WL 1066, at *4 ("A defendant in a state court should not be able to extend the time for removal while attempting in the state court to secure dismissal of the action. . . .  The removal procedure is not designed for such waste and duplication of judicial resources, and for such delay.").  The Court therefore finds that IDC's explanation for its delay suffices to justify the limited extension of time it seeks.  *See State Farm*, 2010 WL 331786, at *7 (permitting untimely removal when there was no evidence that foreign state litigant acted in bad faith in seeking its removal).

In sum, all four factors weigh in favor of enlarging the removal period by two days to permit IDC's untimely filing.  The Court therefore denies plaintiffs' motion to remand on untimeliness grounds and turns to plaintiffs' remaining arguments for returning all or part of this lawsuit to state court.

### C.    Plaintiffs' Dismissal of Claims Against IDC

Plaintiffs argue that the Court must remand because the removing party, IDC, was never successfully joined by defendant Cooper/T. Smith.  Plaintiffs reason as follows: (1) the Louisiana Code of Civil Procedure precludes defendants from filing a third-party demand for tort contribution against a former co-defendant who has been dismissed with prejudice from the main action; (2) plaintiffs initially sued both Cooper/T. Smith and IDC in state court; (3) plaintiffs moved the state trial court to dismiss IDC with prejudice

14

before Cooper/T. Smith took any action in this case; (4) even though the state trial court did not grant plaintiffs' motion until after Cooper/T. Smith filed its third-party demand seeking contribution and/or indemnification from IDC, plaintiffs' dismissal was retroactively effective as of the date plaintiffs filed their motion; and (5) IDC was therefore not a party to this litigation at the time it attempted to remove under the FSIA.

This argument fails at the fourth step. Cooper/T. Smith answered plaintiffs' state-court petition and filed its third-party demand against IDC on February 23. The state trial court did not issue an order dismissing plaintiffs' claims against IDC and South African Marine until March 9. Thus, at the time Cooper/T. Smith asserted its claims against IDC for indemnification and/or contribution, IDC had not yet been dismissed from the main action. For this reason, the case upon which plaintiffs rely, *DiBenedetto v. Noble Drilling Co.*, 23 So. 3d 400 (La. App. 4 Cir. 2009), is inapposite. There, an asbestos plaintiff moved to dismiss two defendants with prejudice immediately after filing his complaint, and the trial court granted the motion. *Id.* at 403. Later, on the plaintiffs' motion, the trial court issued an order prohibiting the remaining defendants from filing third-party demands against the dismissed defendants for tort contribution, and the Louisiana Fourth Circuit Court of Appeal upheld that order on appeal. *Id.* at 403-04.

Here, by contrast, Cooper/T. Smith filed its third-party demand against IDC before the trial court dismissed IDC from the main action. Thus, the procedural defect at issue in *DiBenedetto* did not arise and was not litigated in state court. Contrary to plaintiffs' assertion, Cooper/T. Smith's filing effectively made IDC a third-party defendant in this lawsuit. *See* La. Code Civ. Proc. art. 1032 (An incidental demand shall be commenced *by a petition* which shall comply with the requirements of Articles 891, 892 and 893) (emphasis added); *Sharp v. Massey-Ferguson, Inc.*, 153 So. 2d 508, 511 (La. App. 4 Cir. 1963) ("[A] defendant may, *by third party petition*, institute action against the adverse third party who is or [m]ay be liable to him for all or part of the principal demand.") (emphasis added); *see also* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Faced with Cooper/T. Smith's third-party claim for indemnification and/or contribution, IDC was entitled to remove the entire action to federal court under the FSIA, which it did on April 13. *See Nolan*, 919 F.2d at 1066 (holding that when a third-party defendant removes under the FSIA, the entire action is removed).

Recognizing the timing issue, plaintiffs assert that IDC's dismissal from the main action was effective when plaintiffs filed their motion to dismiss on February 17, not the date on which the state trial court granted the motion three weeks later. The language of the state trial court's order does not provide

for retroactive application.  But plaintiffs contend that the dismissal was nonetheless effective upon filing because the state trial court did not have legal authority to prevent plaintiffs from dismissing their claims against IDC.  This argument misses the mark.

Black's Law Dictionary defines "motion" as "[a] written or oral application requesting a court to make a specified ruling or order."  Black's Law Dictionary (10th ed. 2014).  Because a motion asks a court to take a particular course of action, the motion itself carries no lawful authority.  It is the court's order that alters the litigants' rights and respective positions.  *See Evraz Inc., N.A. v. Cont'l Ins. Co.*, No. 3:08-CV-00447-AC, 2014 WL 2093838, at *3 (D. Or. May 16, 2014) ("Continental's filing is clearly a motion, as it requests an order from the court.").  Thus, regardless of when plaintiffs filed their motion to dismiss IDC from the main action, or whether the state trial court had lawful authority to deny the motion, the dismissal was not effective until the state trial court granted plaintiffs' motion on March 9.  By that point, Cooper/T. Smith had already filed a third-party demand, making IDC a third-party defendant.  Thus, IDC was and remains a party to this litigation and, as such, is entitled to remove the entire action under the FSIA.  *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (holding that subject matter jurisdiction is fixed at the time of removal).

**D.    Plaintiffs' Jones Act Claims**

Plaintiffs' final argument for remand is that IDC cannot remove this case to federal court because plaintiffs assert Jones Act claims against IDC. Generally, Jones Act claims cannot be removed because the Jones Act incorporates the general provisions of the Federal Employers' Liability Act, including 28 U.S.C. § 1445(a), which bars removal. *See Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995). To begin, the Court harbors significant doubts as to whether the decedent, Lindsay, was a Jones Act seaman, and whether Jones Act non-removability trumps a foreign state's right to remove under the FSIA. *See Talbot*, 835 F. Supp. at 355 (holding that in order to effectuate Congress's purposes, removal by a foreign state under the FSIA preempts claim-specific statutory restrictions on removal, thereby allowing removal of actions under the Jones Act); *see also Rodriguez v. Transnave Inc.*, 8 F.3d 284, 288 (5th Cir. 1993) (permitting removal of Jones Act claim by FSIA defendant). At this point, however, these issues are purely academic and do not warrant discussion.

Whatever its applicability at the outset of this case, the Jones Act's non-removability rule has no bearing on plaintiffs' remand motion because plaintiffs scuttled their Jones Act claims before this case was removed to federal court. Of the many defendants named in their state-court petition,

plaintiffs asserted Jones Act claims against two: IDC and South African Marine.  The state trial court granted plaintiffs' motion to dismiss all claims against both parties with prejudice on March 9.  Thus, when IDC removed this lawsuit as a third-party defendant one month later, none of plaintiffs' Jones Act claims remained to defeat removal.  Absent a viable Jones Act claim, plaintiffs' motion to remand on these grounds must be denied.

### E.    Severance

As noted, when IDC removed this suit, it removed the entire action, including plaintiffs' original claims against Cooper/T. Smith and the other named defendants.  *See Nolan*, 919 F.2d at 1066 (holding that when a third-party defendant removes under the FSIA, the entire action is removed).  As an alternative to remand, plaintiffs ask the Court to sever Cooper/T. Smith's third-party claims against IDC and remand the main action to state court. Plaintiffs give two arguments to support this request.  First, plaintiffs contend that the Court is required to sever and remand under the Federal Court Jurisdiction and Venue Clarification Act of 2011, which amended 28 U.S.C. § 1441(c).  Second, plaintiffs argue that even if severance is not mandatory, the Court has discretion to pursue this course of action and that there are compelling reasons for doing so.  The Court addresses each argument in turn.

Section 1441 governs the removal of civil actions from state to federal court.  As amended by the Federal Court Jurisdiction and Venue Clarification Act of 2011, subsection (c) provides, in relevant part:

> (1) If a civil action includes--
>
>> (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and
>>
>> (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).
>
> (2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. . . .

28 U.S.C. § 1441(c).  As the mandatory language of subsection (c)(2) makes clear, this provision requires district courts to sever and remand certain state-law claims that are unrelated to claims properly in federal court.  A plain reading of the statutory language reveals, however, that mandatory severance and remand applies only to claims that are not within the original or supplemental jurisdiction of the district court.  *See Huston v. Affinity Med. Sols., Inc.*, No. C12-5202 TEH, 2012 WL 6087394, at *2 (N.D. Cal. Dec. 6, 2012) ("This Court therefore has supplemental jurisdiction over all of the

claims, and 28 U.S.C. § 1441(c) has no application to this case."); *Hayley v. Regions Bank*, No. 3:12-CV-437-WKW, 2012 WL 6028238, at *2 (M.D. Ala. Dec. 4, 2012) ("Plaintiffs' state law claims fall squarely within this court's supplemental jurisdiction, making severance and remand unavailable.").

Contrary to plaintiffs' assertion, Cooper/T. Smith's third-party claims against IDC for contribution and/or indemnification vest this Court with supplemental jurisdiction over plaintiffs' claims in the main action. The supplemental jurisdiction statute provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The statute grants jurisdiction over claims that do not independently come within the jurisdiction of the district court but form part of the same Article III "case or controversy" as the federal claim. *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004) (citing *Jinks v. Richland County, S.C.*, 538 U.S. 456, 458 (2003)). To determine whether claims fall under section 1367(a), the district court must ask "whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of

operative fact.'"  *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)

(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  A loose

factual connection between the claims is generally sufficient.  *See Ammerman*

*v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).

Here, Cooper/T. Smith asserts a claim for contribution and/or

indemnification against IDC under Louisiana law.  In support, Cooper/T.

Smith alleges that IDC failed to warn Cooper/T. Smith and its employees of

hazards associated with handling asbestos that was transported, installed, or

otherwise present onboard IDC's vessels.  It further alleges that IDC failed to

take reasonable safety measures to prevent the decedent, Lindsay, from

occupational exposure to asbestos dust and fibers.  Thus, Cooper/T. Smith's

claims against IDC are directly related to plaintiffs' negligence, strict liability,

intentional tort, and premises liability claims against Cooper/T. Smith and the

other defendants in the main action.  Discovery related to Lindsay's alleged

occupational exposure will be necessary to resolve both the direct and the

third-party claims.  Plaintiffs' claims are therefore part of the same case or

controversy over which this Court has original jurisdiction.  *See In re Air*

*Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932, 943 (7th

Cir. 1996) (holding that state law claims against a first-party defendant that

are removed by a third party under the FSIA are subject to the district court's

supplemental jurisdiction); *Marshall v. Boeing Co.*, 940 F. Supp. 2d 819, 822 (N.D. Ill. 2013) (holding that aircraft passenger's product liability and negligence claims against an aircraft manufacturer were part of the same case or controversy as the manufacturer's third-party contribution claim against Polish airline when the manufacturer's allegations were directly related to emergency landing at issue in the passenger's action). Accordingly, 28 U.S.C. § 1441(c) is not satisfied, and the Court is not required to sever and remand plaintiffs' claims to state court.

Next, plaintiffs argue that even if severance is not mandatory, the Court should exercise its discretion to return plaintiffs' main action to state court, retaining only Cooper/T. Smith's third-party claim. As an initial matter, at least one circuit court has held that a district court has no discretion to remand a plaintiff's claims when a third-party defendant removes the third-party and primary claims to federal court under the FSIA. *See In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1260 (11th Cir. 1992). Even assuming the Court has the authority to chart a different course, it declines plaintiffs' invitation to do so in this case. *See Delgado*, 231 F.3d at 182 (finding that the district court did not abuse its discretion in denying the plaintiff's motion to sever the third-party claims from the primary claims and remand the primary claims, when there was no indication that the third-party claims unduly complicated

or overburdened the primary claims, and judicial efficiency warranted the disposition of all of the claims together).  As noted, common questions of fact concerning decedent Lindsay's occupational exposure unite the primary and third-party claims.  Dividing this case into two separate actions would waste judicial resources and present opportunities for inconsistent rulings.  Judicial economy therefore counsels against severance and remand in this case.

### F.   The Alleged "Illusoriness" of Cooper/T. Smith's Third-Party Claims Against IDC

Plaintiffs' final argument for the Court to remand all or part of this lawsuit is that Cooper/T. Smith's third-party claims against IDC are "illusory" and legally unfounded.  In support, plaintiffs asserts that under Louisiana law, a remaining defendant may not assert a third-party demand for tort contribution against a former co-defendant who has been dismissed with prejudice from the main action.  Plaintiffs further assert that Cooper/T. Smith has a long history of filing contribution and indemnification claims against IDC in asbestos cases and that, to plaintiffs' knowledge, Cooper/T. Smith has yet to actually prosecute any claims against its nominal opponent.[21]  Cooper/T. Smith notes--correctly, as explained in Section C of this order--that its third-party demand against IDC was not procedurally defective.  But it provides no

---

[21] R. Doc. 9-1 at 25.

facts or argument to dispute plaintiffs' contention that, in light of plaintiffs' dismissal of its own claims against IDC, Cooper/T. Smith has no reasonable probability of recovery against the South African entity.

The Court sympathizes with plaintiffs' argument that Cooper/T. Smith's assertion of a meritless third-party demand against IDC represents a transparent attempt to manufacture federal jurisdiction. As noted, the FSIA's removal provision effectively federalizes an entire lawsuit when a foreign state is joined as a third-party defendant. The breadth of this provision carries the potential for abuse by defendants seeking grounds for removal of claims that, in substance, belong in state court. Thus, "district court[s] must be vigilant to prevent defendants from fraudulently or collusively filing third-party complaints against foreign parties in order to create federal subject-matter jurisdiction." 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3728.1 (4th ed.); *cf. Delgado*, 231 F.3d at 178 (holding that defendant did not improperly join a foreign state as a third-party when there was no evidence that defendants "manufactured [the third-party defendant's] status as a foreign sovereign or their claims for contribution or indemnity against [the third-party defendant]").

Nonetheless, by virtue of Cooper/T. Smith's third-party demand, IDC is a party to this lawsuit. "[P]arties may legitimately try to obtain the jurisdiction

25

of federal courts, as long as they lawfully qualify under some of the grounds that allow access to this forum of limited jurisdiction." *Nolan*, 919 F.2d at 1068 (quoting *USI Properties Corp. v. MD Construction Co.*, 860 F.2d 1, 6 (1st Cir. 1988)).   By enacting the FSIA, Congress not only created federal jurisdiction over claims against foreign state defendants like IDC, but expressed a strong preference for enabling such defendants the option of litigating in federal court. *See Delgado*, 231 F.3d at 178 (noting "Congress's paramount desire that a foreign sovereign have access to a federal forum to ensure uniformity in procedure and substance"); *Refco*, 755 F Supp at 83–84 (noting the "strong policy in favor of removal involving foreign sovereigns"). Nothing about the FSIA's removal provision limits the removal right to meritorious claims.  On the contrary, Congress's solicitude for foreign litigants is implicated with particular force when, as alleged here, a domestic defendant asserts groundless third-party claims against a foreign state to advance its own litigation interests. *See Steward*, 935 F. Supp. at 853 (finding that "Congress has expressed a preference for allowing foreign sovereigns the choice of litigating in a federal forum where there is a greater chance of uniformity of action by the courts").  For this reason, the Court will not remand this lawsuit with IDC as a party absent some showing of collusion between IDC and Cooper/T. Smith, which has not been made here.

In its opposition brief, IDC adopts plaintiffs' argument that because IDC has been dismissed from the main action, Cooper/T. Smith's third-party claims against IDC for contribution and/or indemnification lack merit.[22]  The Court agrees.  *See T.J. Trucking, Inc. v. Paxton Nat. Ins. Co.*, 502 So. 2d 1141, 1144 (La. App. 4 Cir. 1987) ("Once a defendant has been released from an action, the remaining defendants in the action have no right to assert a claim for indemnity and/or contribution from the released co-defendant.  The exclusive remedy of the unreleased defendant is to have the judgment reduced by the virile share of the released defendant.").  Accordingly, IDC has twenty-one (21) days from entry of this order to file its motion to dismiss Cooper/T. Smith's third-party demand.  Failure to comply with this order will prompt the Court to reconsider its decision not to remand this lawsuit on grounds of collusive joinder.  *See* 28 U.S.C. § 1359 ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."); *see also Nolan*, 919 F.2d at 1067 (applying 28 U.S.C. § 1359 in the context of a third-party defendant's removal under the FSIA).

---

[22] R. Doc. 13 at 14 ("IDC adopts Plaintiffs' assertion that IDC is not a proper party to this lawsuit.").

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES plaintiffs' motion to remand.  The Court ORDERS IDC to file its motion to dismiss Cooper/T. Smith's third-party claims against it within twenty-one (21) days of entry of this order.


New Orleans, Louisiana, this <u>14th</u> day of July, 2016.


                _Sarah Vance_

                     SARAH S. VANCE
             UNITED STATES DISTRICT JUDGE